UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

YU ZHOU and LI CHEN,

Defendants.

Case No.:  3:25-cv-00902-JES-SBC

**ORDER GRANTING CONSOLIDATED MOTION FOR JUDGMENT ON THE PLEADINGS**

**[ECF Nos. 17, 18]**

## I.    INTRODUCTION

Defendants Yu Zhou ("Zhou") and Li Chen ("Chen") (collectively "Defendants") are naturalized United States citizens. Chen was naturalized on August 10, 2016, and Zhou was naturalized on February 22, 2017. In 2020, both Defendants pled guilty to one count of conspiracy to commit theft of trade secrets, in violation of 18 U.S.C. § 1832(a)(5), and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. As part of their plea agreements, Defendants admitted that they misappropriated scientific research from their employer Nationwide Children's Hospital ("NCH") and sold the information to companies in China during their employment from 2007 to 2017 for Zhou and from 2008-2018 for Chen. These crimes involving moral turpitude ("CIMT") were committed during the five-statutory period in which Defendants had to display good moral character as part

1

of their naturalization process and were not disclosed during the naturalization process. Therefore, the Court must revoke the United States citizenship of both Defendants as their citizenship was illegally procured by committing CIMT that adversely reflected on their moral character and they could not establish good moral character during the statutory period.

## II.    BACKGROUND

### A. Procedural Background

The United States of America (the "Government") filed a Complaint to revoke the United States citizenship of Defendants for failing to disclose CIMT committed during the five-year statutory period prior to their naturalization.[1] *See generally* Zhou Compl.; Chen Compl. On May 16, 2025, the cases were consolidated and Defendants later filed an answer. ECF Nos. 8, 15. The Government now moves for Judgment on the Pleadings. ECF Nos. 17, 18.[2] Defendants filed a joint opposition to the Motions and a cross-motion for judgment on the pleadings. ECF No. 19 ("Opp'n"). The Government filed a reply and Defendants filed a reply. ECF Nos. 20, 21, 22. On September 17, 2025, the Court held oral argument on the Motions. ECF No. 24. For the reasons set forth below, the Court **GRANTS** the Government's Motion on counts 1 and 2 and finds that Defendants committed CIMT during the five-year statutory period immediately preceding their naturalization and could not establish good moral character.

### B. Factual Background

#### 1.  Defendant Zhou

Zhou is a Chinese national who entered the United States on August 25, 2005, as an exchange visitor. Zhou Compl. ¶ 7; ECF No. 1-2 (Zhou Affidavit of Good Cause "Zhou AGC") at 2. In May 2008, Zhou arrived in the United States again on an H-1B Specialty

---

[1] ECF No. 1 in 3:25-cv-00902-JES-SBC ("Zhou Compl."); ECF No. 1 in 3:25-cv-00903-JES-SBC ("Chen Compl.")

[2] ECF No. 17 was filed for Zhou; ECF No. 18 was filed for Chen

Occupation visa sponsored by NCH. *Id.* at ¶ 8. On June 30, 2011, Zhou adjusted his immigration status to permanent resident as a derivative spouse after his wife, Chen, obtained an immigrant visa as a foreign national of "extraordinary ability." *Id.* at ¶ 9. On July 8, 2016, Zhou initiated his naturalization process with United States Citizenship and Immigration Services ("USCIS") by filing a Form N-400 Application for Naturalization ("naturalization application"). *Id.* at ¶ 10.  In the naturalization application, Zhou answered "No" to questions asking whether he had ever committed a crime for which he was not arrested, whether he had ever given U.S. Government officials any false or misleading information, and whether he had ever lied to any U.S. Government officials to gain entry or admission into the United States. *Id.* at ¶¶ 11-13. Zhou signed his naturalization application under penalty of perjury. *Id.* at ¶ 14. On January 11, 2017, an immigration officer interviewed Zhou regarding his naturalization application. *Id.* at ¶ 15. The officer asked Zhou the same questions contained in the naturalization application, and Zhou again gave the same answers listed above. *Id.* at ¶¶ 17-20. Zhou swore under penalty of perjury in the interview that the contents of his naturalization application were accurate. *Id.* at ¶ 21. On February 22, 2017, Zhou took the oath of allegiance and was admitted as a citizen of the United States and issued Certificate of Naturalization No. 38651568. *Id.* at ¶ 23. Zhou obtained naturalization based on the sworn answers he gave in his naturalization application and interview. *Id.* at ¶¶ 22-23.

On July 29, 2019, Zhou was arrested after indictment on July 23, 2019, and charged with criminal conduct arising from his employment at NCH, where he had worked as a biological researcher from 2007 to late 2017. *Id.* at ¶¶ 24, 35. On December 12, 2020, Zhou signed a plea agreement and pled guilty to one count of conspiracy to commit theft of trade secrets, in violation of 18 U.S.C. § 1832(a)(5), and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. *Id.* at ¶ 36. According to his plea agreement, Zhou's criminal conduct arose from his misappropriation of NCH's proprietary scientific research for his own personal financial gain through sales of information to companies in China. *Id.*; ECF No. 1-6 ("Zhou Plea Agreement") at 11-12. In support of his guilty plea, Zhou

agreed that he committed these crimes during his tenure at NCH from 2007-2017. *Id.* at 11.

### 2. Defendant Chen

Chen is a Chinese national who entered the United States on December 19, 2007, on an H-1B Specialty Occupation visa sponsored by NCH. Chen Compl. ¶ 7; ECF No. 1-2 at 2.[3] On October 20, 2010, USCIS approved Form I-140, and Chen was approved as an alien of extraordinary ability. *Id.* at ¶ 8. On March 23, 2011, Chen adjusted her immigration status to permanent resident. *Id.* at ¶ 9. On March 23, 2016, Chen initiated her naturalization process by filing a naturalization application. *Id.* at ¶ 10. In the naturalization application, Chen answered "No" to questions asking whether she had ever committed a crime for which she was not arrested, whether she had ever given U.S. Government officials any false or misleading information, and whether she had ever lied to U.S. Government officials to gain entry or admission into the United States. *Id.* at ¶¶ 11-13. Chen signed her naturalization application under penalty of perjury. *Id.* at 14. On June 28, 2016, an immigration officer interviewed Chen regarding her naturalization application. *Id.* at ¶ 15. The officer asked Chen the same questions contained in the naturalization application, and Chen again gave the same answers listed above. *Id.* at ¶¶ 17-20. Chen swore under penalty of perjury in the interview that the contents of her naturalization application were accurate. *Id.* at ¶¶ 14, 21. On August 10, 2016, Chen took the oath of allegiance and was admitted as a citizen of the United States and issued Certificate of Naturalization No. 38376496. *Id.* at ¶ 22. Chen obtained naturalization based on the sworn answers she gave in her naturalization application and interview. *Id.* at ¶ 22.

On July 29, 2019, Chen was arrested after indictment on July 23, 2019, and charged with criminal conduct arising from her employment at NCH, where she had worked as a biological researcher from 2008 to 2018. *Id.* at ¶¶ 24, 35. On April 2, 2020, Chen signed a

---

[3] ECF No. 1-2 in 3:25-cv-00903-JES-SBC, Affidavit of Good Cause ("Chen AGC")

plea agreement and pled guilty to one count of conspiracy to commit theft of trade secrets, in violation of 18 U.S.C. § 1832(a)(5), and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. *Id.* at ¶ 35. According to her plea agreement, Chen's criminal conduct arose from her misappropriation of NCH's proprietary scientific research for her own personal financial gain through sales of information to companies in China. ECF No. 1-6 at 11-13[4]. In support of her guilty plea, Chen agreed that she committed these crimes during her tenure at NCH from 2008-2018. *Id.* at 11.

### III.    LEGAL STANDARD

A motion for judgment on the pleadings is appropriate "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co. Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotations omitted). Courts hearing motions for judgment on the pleadings "tak[e] all material allegations of the non-moving party as contained in the pleadings as true, and constru[e] the pleadings in the light most favorable to the [non-moving] party." *Doyle v. Raley's Inc.*, 158 F.3d 1012, 1014 (9th Cir. 1998).

A court's scope of review in a motion for judgment on the pleadings is limited to the pleadings: if the review includes matters outside the pleadings, the motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). A court may consider evidence on which the complaint necessarily relies only when: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions

---

[4] ECF No. 1-6 in 3:25-cv-00903-JES-SBC ("Chen Plea Agreement")

the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

In denaturalization proceedings, the Government carries the "heavy burden" of providing "clear, unequivocal, and convincing" evidence that citizenship should be revoked. *Fedorenko v. U.S.*, 449 U.S. 490, 505 (1981) The Government's evidence supporting denaturalization "must not leave the issue in doubt." *Id.* (internal quotations and citations omitted). However, if the Government has met its burden of proving that a naturalized citizen improperly procured his naturalization, the court has no discretion to excuse the defendant's conduct and must enter a judgment of denaturalization. *Id.* at 517.

### IV.    JUDICIAL NOTICE

Before addressing the merits of the Motions, the Court first considers the Government's argument that the Court can take judicial notice of several documents attached to the Complaint. Federal Rule of Evidence 201 provides "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from the sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2).

### A. Defendant Zhou

There are several documents attached to the complaint in Zhou's matter, including the naturalization application, the plea agreement, the Indictment from the underlying criminal case, and the judgment from the criminal proceedings. Zhou Compl., Exh. B, E, F, G. Zhou argues that the naturalization application was not attached to the affidavit for good cause, but does not otherwise dispute the authenticity or accuracy of the document or information contained in the document. *See* Opp'n at 15. Despite Zhou's argument, the naturalization application was indeed attached to the complaint. *See* ECF No. 1-3. Similarly, Zhou does not challenge the authenticity or accuracy of the plea agreement, the indictment or the judgment. A court may take judicial notice of undisputed "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), *overruled*

*on other grounds*. Each of the documents are appropriate for the Court to take judicial notice and the Court therefore takes judicial notice of each of the aforementioned documents.

**B. Defendant Chen**

Similar to Zhou, there are several documents attached to the complaint in Chen's matter, including the naturalization application, the plea agreement, the Indictment from the underlying criminal case, and the judgment from the criminal proceedings. Chen Compl., Exh. B, E, F, G. Chen argues that the Chen AGC is boilerplate, a near verbatim copy of the complaint, with no independent factual detail and no authenticated evidence. Opp'n at 19. Further, Chen argues that a copy of the naturalization application is attached to the complaint, but it is not a certified copy and without certification or a custodian affidavit establishing authenticity, it could not be introduced at trial without additional testimony. *Id.* at 20. Additionally, Chen argues that the Chen AGC fails to demonstrate that its other referenced records and testimony come from competent, authenticated sources. *Id.* at 20. Similar to Zhou, Chen does not challenge the authenticity or accuracy of the plea agreement, the indictment or the judgment. Additionally, Chen does not challenge the accuracy of the information contained within the naturalization application. A court may take judicial notice of undisputed "matters of public record." *Lee*, 250 F.3d at 688-89. Each of the documents are appropriate for the Court to take judicial notice and the Court therefore takes judicial notice of each of the aforementioned documents.

## V. LEGAL ANALYSIS

The Government argues that the undisputed facts establish three independent legal grounds for denaturalization: (1) in count 1, that Defendants, during the naturalization proceedings and within a period in which they were statutorily required to demonstrate good moral character, committed a CIMT for which Defendants were later convicted; (2) in count 2, that Defendants, during the naturalization proceedings and within the good moral character period, committed unlawful acts that adversely reflect on their moral character for which no extenuating circumstances exists; and (3) in count 4, that

Defendants procured their naturalization by concealing and willfully misrepresenting multiple facts that were material to determining their naturalization eligibility. Zhou Motion at 10; Chen Motion at 10. If the Court finds no material issue of fact remains to be resolved on any single count, it must grant the Motions and requested relief. *Hal Roach Studios, Inc.*, 896 F.2d at 1550. Defendants challenge the sufficiency of the affidavit of good cause in each of their cases but otherwise do not address the Government's arguments regarding the commission of a CIMT committed during the statutory period. As a preliminary matter, the Court will first determine the sufficiency of the affidavit of good cause.

### A. Affidavit of Good Cause

When the government attempts to denaturalize an individual, "the affidavit showing good cause is a procedural requisite to the maintenance of proceedings." *U.S. v. Zucca*, 351 U.S. 91, 99 (1956). The affidavit of good cause provides a "safeguard which must not be lightly regarded" given the serious nature of denaturalization, and is thus treated as a "prerequisite to the initiation of such proceedings." *Id.* at 100. The affidavit of good cause must show "with adequate particularity the grounds upon which the Government's suit rest[s]." *Nowak v. U.S.*, 356 U.S. 660, 662 (1958). However, the affidavit need not be made by an individual with personal knowledge of the matters contained therein to fulfill its purpose of "protect[ing] those proceeded against from ill-considered action." *Id.* The affidavit can be made by an immigration official who swears that the allegations contained in the affidavit are based upon facts contained in his organization's official records to which he has access. *Id.* An affidavit of good cause is sufficient to initiate proceedings when the officer affiant states the facts in the record which give rise to an action for denaturalization and affirms that his findings come from his review of official records. *U.S. v. Martinez*, 507 F. Supp. 3d 793, 802 (S.D. Tex. 2020).

Zhou alleges numerous deficiencies with the Zhou AGC; (1) "the affidavit refers to a [naturalization application] that has not been produced;" (2) the interviewing officer who is identified "does not appear in any of the discovery or record materials;" and (3) the

3:25-cv-00902-JES-SBC

affiant relied on a transcript that is "riddled with errors … unauthenticated and internally inconsistent," and unreliable for a hosts of reasons. Opp'n at 15-17. Zhou does not cite any specific authority showing that the deficiencies listed above invalidates an affidavit for good cause.

Chen alleges that the Chen AGC is (1) "boilerplate, a near-verbatim copy of the complaint, with no independent factual detail and no authenticated evidence,"; (2) the copy of her naturalization application submitted with the complaint is not a certified copy; and (3) "[t]he affidavit here merely recites conclusions drawn from unspecified records, without identifying their custodian or establishing their authenticity." *Id.* at 19-20. Similar to Zhou, Chen does not cite any specific authority showing the deficiencies listed above invalidates an affidavit for good cause.

The government is not required to authenticate all records used by the affiant in the affidavit, but only to "disclos[e] some of the premises from which the conclusion is drawn," such that "an experienced judge should be able to detect a United States attorney's reckless categorization or noncritical selection of candidates for denaturalization." *U.S. v. Minerich*, 250 F.2d 721, 725 (7th Cir. 1957).

### 1. Defendant Zhou

The Zhou AGC was prepared by an immigration officer who attested under penalty of perjury that his statements reflected his agency's records. Zhou AGC ¶¶ 1-2. The affidavit sets forth record-based facts showing that Zhou was naturalized and then subsequently pled guilty to conduct inconsistent with his naturalization, and that pled conduct rendered his answers in his application false. *Id.* at ¶¶ 6-7 *et seq.* Even taken as true, the purported anomalies in the underlying documents do not raise any issue regarding the substance of the information the affidavit contains. *See* Opp'n at 15-17. Further, contrary to Zhou's argument, the naturalization application was attached to the complaint. Zhou Compl.; Exh. B; ECF No. 1-3. The affidavit does not bear any indicia of reckless categorization or noncritical selection of Zhou for denaturalization, but instead shows a reasonable basis for the government to initiate these serious proceedings. *See Minerich*,

3:25-cv-00902-JES-SBC

250 F.2d at 725; *Nowak*, 356 U.S. at 662. The substantive facts in the Zhou AGC are supported by the Government's other exhibits and not disputed by the defense. *Cf.* Zhou AGC ¶¶ 6-8 (affidavit of good cause describing Zhou's negative answers to questions about criminal acts in his naturalization application and describing the charges to which Zhou pled guilty) with ECF No. 1-3 (Zhou's signed naturalization application with the same negative answers) and ECF No. 1-6 (Zhou's plea agreement with the same charges). Thus, the Court finds that the Zhou AGC is sufficient to initiate denaturalization proceedings against Zhou.

### 2. Defendant Chen

Similar to Zhou, the Chen AGC was prepared by an immigration officer who attested under penalty of perjury that his statements reflected his agency's records. Chen AGC ¶¶ 1-2. The affidavit sets forth record-based facts showing that Chen was naturalized and then subsequently pled guilty to conduct inconsistent with her naturalization, and that pled conduct rendered her answers in her application false. *Id.* at ¶¶ 6-7 *et seq.* Even taken as true, the purported anomalies in the underlying documents do not raise any issue regarding the substance of the information the affidavit contains. *See* Opp'n at 15-17. The affidavit does not bear any indicia of reckless categorization or noncritical selection of Chen for denaturalization, but instead shows a reasonable basis for the government to initiate these serious proceedings. *See Minerich*, 250 F.2d at 725; *Nowak*, 356 U.S. at 662. The substantive facts in the Chen AGC are supported by the Government's other exhibits and not disputed by the defense. *Cf.* Chen AGC ¶¶ 6-8 (affidavit of good cause describing Chen's negative answers to questions about criminal acts in her naturalization application and describing the charges to which Chen pled guilty) with ECF No. 1-3 (Chen's signed naturalization application with the same negative answers) and ECF No. 1-6 (Chen's plea agreement with the same charges). Thus, the Court finds that the Chen AGC is sufficient to initiate denaturalization proceedings against Chen.

//

//

**B. Illegal Procurement of Naturalization**

There are several statutory requirements that an applicant for naturalization must meet before obtaining citizenship. 8 U.S.C. § 1427(a). Among those statutory requirements is the mandate that no person shall be naturalized unless the person "during all periods referred to in this subsection has been and still is a person of good moral character…." 8 U.S.C. § 1427(a)(3).

Naturalization is "illegally procured" when the individual has failed to comply with all congressionally imposed prerequisites for naturalization before and including the time he became a naturalized citizen. *Fedorenko*, 449 U.S. at 506. Strict compliance with all statutory prerequisites is required. *Id.* Noncompliance with any statutory prerequisite renders naturalization "illegally procured." *Id.*

As discussed above, one of the requirements for naturalization is that the applicant must be "a person of good moral character" for the five-year period preceding the filing of an application for naturalization and continuing until the applicant takes the oath of allegiance. 8 U.S.C. § 1427(a)(3); *U.S. v. Bangalan*, No. 13-CV-2570-H, 2014 WL 12531202, at *3 (S.D. Cal. Oct. 6, 2014). Under 8 U.S.C. § 1101(f)(1) through (8), an individual cannot have good moral character if he falls within certain enumerated classes. *See* 8 U.S.C. § 1101(f)(1)-(8).

An applicant statutorily lacks good moral character if he commits any number of specified offenses during the statutory period and later either is convicted or admits commission of the crime. 8 U.S.C. § 1101(f)(3). These specified offenses include the commission of "a crime involving moral turpitude … or an attempt or conspiracy to commit such a crime" if the individual was convicted of or admits to committing the crime. 8 U.S.C. § 1182(a)(2)(A)(i)(f). The statutory period during which an applicant must have good moral character is five years preceding naturalization. 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1). "Taken together, an applicant lacks good moral character if he or she (1) commits a crime involving moral turpitude; (2) during the statutory period; and (3) later is convicted of the crime or admits the crimes or the criminal acts." *U.S. v. Salem*, 496 F.

Supp. 3d 1167, 1175 (N.D. Ill. 2020). The Ninth Circuit has held that the commission of a crime, rather than convictions itself, during the time frame relevant to naturalization is sufficient to demonstrate lack of good moral character. *U.S. v. Teng Jiao Zhou*, 815 F.3d 639, 644 (9th Cir. 2016). The Supreme Court and Ninth Circuit have held that crimes of intentional fraud are categorically CIMT. *Jordan v. De George*, 341 U.S. 223, 229 (1951); *Planes v. Holder*, 652 F.3d 991, 997-98 (9th Cir. 2011). Individuals who have become citizens through the statutorily authorized naturalization process may be denaturalized if their naturalization was "illegally procured," meaning that they failed to meet "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko*, 449 U.S. at 506; 8 U.S.C. § 1451(a).

### 1. Defendant Zhou

The Government alleges in counts 1 and 2 that Zhou committed a CIMT during the five-year statutory period preceding his naturalization, which made him ineligible for naturalization. Zhou Motion at 19-21. Zhou's five-year statutory period began on July 8, 2011, which is five years before he filed his naturalization application on July 8, 2016, and ended on February 22, 2017, the date he was naturalized. Zhou Compl. ¶¶ 10, 23, 63, 66; ECF No. 15 ¶ 23; ECF Nos. 1-3, 1-4, 1-5; Zhou Motion at 20. In his guilty plea, Zhou admitted that he conspired to commit theft of trade secrets, in violation of 18 U.S.C. § 1832(a)(5), and conspired to commit wire fraud, 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349. Zhou Compl. ¶ 36. Conspiracy to commit wire fraud is a CIMT because it requires intentional fraud. *See U.S. v. Marcu*, 210 F. Supp. 3d 1234, 1241 (D. Nev. 2016) (finding the same in an analogous case because "[w]ire fraud requires 'the existence of a scheme to defraud' and 'a specific intent to defraud[]' [and a] conviction for a conspiracy is also a CIMT if the underlying crime is a CIMT.") (internal quotations and citations omitted). Zhou attested that he committed these crimes during the period of his employment at NCH between 2007 and 2017. Zhou Compl. ¶ 37. In his opposition and at oral argument, Zhou did not challenge any of these facts. There is, therefore, no contest in the pleadings that Zhou committed a CIMT during the period implicated by his

12

naturalization process. Zhou's naturalization was thus illegally procured under 8 C.F.R. § 316.10(a)(1)'s requirement of good moral character and may be revoked. *See* 8 U.S.C. § 1451(a). The Court **GRANTS** the Government's motion for judgment on the pleadings on count 1.

### 2. Defendant Chen

Similar to Chen, the Government alleges in counts 1 and 2 that Chen committed a CIMT during the five-year statutory period preceding her naturalization, which made her ineligible for naturalization. Chen Motion at 19-21. Chen's five-year statutory period began on March 23, 2011, which is five years before she filed her naturalization application on March 23, 2016, and ended on August 10, 2016, the date she was naturalized. Chen Compl. ¶¶ 10, 22, 62, 65; ECF No. 15 ¶ 23; ECF Nos. 1-3, 1-4, 1-5; Chen Motion at 20. In her guilty plea, Chen admitted that she conspired to commit theft of trade secrets, in violation of 18 U.S.C. § 1832(a)(5), and conspired to commit wire fraud, 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349. Chen Compl. ¶ 35. As mentioned above, conspiracy to commit wire fraud is a CIMT because it requires intentional fraud. *See Marcu*, 210 F. Supp. 3d at 1241. Chen attested that she committed these crimes during the period of her employment at NCH between 2008 and 2018. Chen Compl. ¶ 36; Chen Plea Agreement at 12. In her opposition and at oral argument, Chen did not challenge any of these facts. There is, therefore, no contest in the pleadings that Chen committed a CIMT during the period implicated by her naturalization process. Chen's naturalization was thus illegally procured under 8 C.F.R. § 316.10(a)(1)'s requirement of good moral character and may be revoked. *See* 8 U.S.C. § 1451(a). The Court **GRANTS** the Government's motion for judgment on the pleadings on count 1.

### C. Catch-all Provision

Section 1101(f) contains a "catch-all" provision, which provides, "[t]he fact that any person is not within any of the forgoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). Federal

regulations provide additional criteria for when a naturalization applicant shall be found to lack good moral character. *See* 8 C.F.R. § 316.10. Relevant here, the regulations state:

> Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant:
>
> (iii) Committed unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b)(1) or (2).

8 C.F.R. § 316.10(b)(3).

Count 2 alleges that Defendants were ineligible for naturalization under the denaturalization statute's catch-all provision because they committed unlawful acts that adversely reflected on their moral character during the statutory period. Zhou Compl. ¶¶ 71-86; Chen Compl. ¶¶ 70-79; 8 C.F.R. § 316.10(b)(3)(iii). As mentioned above, conspiracy to commit wire fraud is a CIMT as an unlawful act that adversely reflects upon Defendants' moral character. *See Teng Jiao Zhou*, 815 F.3d at 644 (citing cases holding that naturalized citizens who committed unlawful acts under the "catch-all" provision during the statutory period prior to taking the oath of allegiance, but who are arrested and convicted after naturalization, can have their citizenship revoked for lack of good moral character). Defendants have not argued any extenuating circumstances to rebut a finding that they lacked good moral character during the statutory period. There is nothing in the record concerning any mitigating matter during the statutory period. Therefore, there are no extenuating circumstances applicable here, and Defendants lacked good moral character upon naturalization. Accordingly, the Court **GRANTS** the Government's motion for judgment on the pleadings on count 2.

//

//

//

//

3:25-cv-00902-JES-SBC

## VI.   CONCLUSION

For the reasons set forth above, the Government's motion for judgment on the pleadings as to counts 1 and 2 are **GRANTED** on the basis that Defendants illegally procured their citizenship and lacked good moral character during the statutory period. Since the Court grants the Motions on counts 1 and 2, the Court declines to address counts 3 and 4 and Defendants motion for judgment on the pleadings for count 3 is **DENIED as moot.** It is hereby **ORDERED**:

1. Zhou's naturalization is canceled and his Certificate of Naturalization No. 38651568 is revoked, effective as of the original date of the order and certificate, February 22, 2017;

2. Zhou is forever enjoined and restrained from claiming any rights, privileges, benefits, or advantages under any document that evidences U.S. citizenship obtained as a result of his February 22, 2017, naturalization; and

3. Zhou is required to surrender and deliver, within ten days of judgment, his Certificate of Naturalization and any other indicia of U.S. citizenship, including U.S. passport, as well as any copies thereof in his possession or control (and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession or control of others), to the Attorney General or to her representative.

4. Chen's naturalization is canceled and her Certificate of Naturalization No. 38651568 is revoked, effective as of the original date of the order and certificate, August 10, 2016;

5. Chen is forever enjoined and restrained from claiming any rights, privileges, benefits, or advantages under any document that evidences U.S. citizenship obtained as a result of her August 10, 2016, naturalization; and

6. Chen is required to surrender and deliver, within ten days of judgment, her Certificate of Naturalization and any other indicia of U.S. citizenship, including U.S. passport, as well as any copies thereof in her possession or control (and to make good faith efforts to recover and then surrender any copies thereof that she knows

3:25-cv-00902-JES-SBC

are in the possession or control of others), to the Attorney General or to her representative.

The Clerk of Court shall enter judgment for Defendant and close the consolidated cases, including 3:25-cv-00903-JES-SBC.

**IT IS SO ORDERED.**

Dated:  March 27, 2026

Honorable James E. Simmons Jr.
United States District Judge

3:25-cv-00902-JES-SBC